## ARENO v. ASSUNTO.
### Civil Action No. 1513.

District Court, W. D. Louisiana,
Lake Charles Division.

June 4, 1946.

Fred C. Selby, of Lake Charles, La., for plaintiff.

Reed & Holloman, of Lake Charles, La., for defendant.

PORTERIE, District Judge.

The plaintiff sues under the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq., for the sum of $705.75 and for attorney's fees to be fixed at not less than $300, because the defendant, a dealer in secondhand automobiles, violated the Maximum Price Regulation No. 540, of the O.P.A., in a transaction wherein plaintiff turned in his secondhand car and the defendant-dealer sold him in exchange therefor, and for an additional cash consideration, another secondhand car. Plaintiff alleges that the full price of the car he bought was $1395; $620 thereof was paid as follows: Plaintiff's secondhand car for $350 and cash in the sum of $270. The balance of the purchase price, that is, $775, was to be financed in installments.

On the purchaser's statement, it is printed that the "total bona fide selling price," including radio and a heater, is $1175; that the total down payment is $405 and that the deferred payment is $770.

The following paragraph, also, appears:

"3. That I have not made and do not intend to make any collateral or side agreement in connection with the purchase of this article which will have the purpose, intent or effect of evading or circumventing the requirements of the aforementioned Regulation W with respect to the amount of credit that may be extended lawfully to purchase this property."

The plaintiff alleges that he was overcharged, therefore, a sum of $220, which, under the law, should be trebled in his favor and run to $660.

Plaintiff further alleges that the dealer warranted the condition of the automobile under the law, and immediately necessary repairs made amounting to $91.50, fully proved in the case, should be borne in the half thereof as the law provides, or $49.75, by the defendant.

We have heard the case fully, and there has been utterly contradictory evidence. It is difficult, and practically impossible, to tell on which side the evidence preponderates.

Since an action of this character is based on implied fraud, we have permitted any and all evidence, oral and documentary, to vary, alter, and contradict the purchaser's statement.

The chattel mortgage, however, gives as the total consideration $1357.60, $405 of which is acknowledged as being paid in cash, and for the balance of $952.60 a series of fifteen installment notes are executed in favor of a finance company.

We have to reach justice, not by applying technical rulings which would be harsh one way or the other, but by inquiring as

to what the two automobiles were actually worth, and defining, in substance, the transaction.

It is proved beyond a question that the plaintiff's car, which he said was accepted at $350 by the defendant, was in a very bad condition and was worth at most only $200. This amount is all that the defendant received for the car five months later.

Using the supposed car value of $350, and $270 paid in cash, making the sum of $620, and subtracting that amount paid from the ceiling price of $1175, leaves a credit balance due of only $555. But the defendant received a credit balance of $775, or was overpaid $220. We believe this $220 is too much by $150. We reach the $150 by subtracting $200, the actual value of plaintiff's old car, from $350, the supposed worth of plaintiff's old car, as used in the computation at time of sale. Therefore, we find that in justice and in substance defendant overcharged plaintiff only $70 ($220 less $150). Trebling this, under the law, we have the sum of $210. There is no question but that the $45.75 for the repairs is due the plaintiff by the defendant, and, since we are not going to allow attorney's fees, we will sign judgment upon presentation in favor of the plaintiff and against the defendant in the sum of $255.75.